HARVEY E. STEWART, PLAINTIFF-APPELLEE, v. M. N.
VOLL & SON, DEFENDANT-APPELLANT.

Submitted March 23, 1911—Decided June 6, 1911.

A dealer in potatoes, having a large quantity in bags lying on a public
wharf, invited a possible buyer to look at them, which he did by
examining the contents of five or six bags, and upon the vendee's
assurance that they were a fine lot, and ran all through like the
sample, purchased two hundred and fifty bags. The potatoes
examined appeared to be sound and merchantable, when, in fact,
they were diseased and not merchantable, although the defect
was not apparent on reasonable examination. The disease,
though latent, was of a character to render the potatoes worth-
less within from twelve to forty-eight hours, and this condition
was known to the vendor at the time the vendee examined the
sample, but not disclosed by him to the vendee. *Held,* that the
sale was by sample, and an implied warranty arose that the
potatoes were free from any defect rendering them unmerchant-
able under section 16 of the Sales act. *Pamph. L.* 1907, *p.* 311.

On appeal from Camden city District Court.

Before Justices SWAYZE, BERGEN and MINTURN.

For the appellant, *Wilson & Carr.*

For the appellee, *John G. Horner.*

The opinion of the court was delivered by

BERGEN, J. The plaintiff brought this suit in the District
Court to recover for the breach of an implied warranty that
two hundred and fifty bags of potatoes sold him by the de-
fendant were merchantable, and he had judgment, from
which defendant appeals.

We find from the evidence that the defendant had a large
quantity of potatoes in bags on a public wharf which he was
offering for sale; that he called upon the plaintiff and so-
licited him to buy, saying that he had a fine lot of potatoes
and asked plaintiff to go and look at them, which he did, by

examining five or six bags, some of which were opened and some he opened; that after plaintiff had examined the samples the defendant assured him that the lot were all like the sample, and were a fine lot of potatoes, saying, "They ran like that all through," referring to the sample. As the sample appeared to be sound and merchantable, the plaintiff bought two hundred and fifty bags, most of which he resold the same day. Within forty-eight hours it was discovered that the potatoes were diseased, for which reason the sales by the plaintiff were rescinded by his vendees, and the potatoes being worthless plaintiff suffered a total loss. We also find that the defect in the potatoes was one not apparent on a reasonable examination of the sample, but although latent, when the sample was examined was of a character likely to develop within forty-eight hours when they would be worthless, and that they were so afflicted when sold to plaintiff was known to the defendant. We base defendant's knowledge of the defect upon the fact that on the day of the sale, and immediately thereafter, the defendant gave to a general teamster two orders on the transportation company, in whose charge the potatoes were, for delivery to him of the potatoes sold, to be carted by him to the plaintiff, and each of the orders contained an endorsement indicating that they were not sound, one "sold as they are, not guaranteed to be sound," and the other "sold not to be sound," nor did the defendant, as a witness, deny that he knew they were unsound, his defence being that he did not warrant, and produced the two orders, which plaintiff never saw until at the trial, as evidence that they were sold as unsound. The conclusion we reach is that the goods were sold by sample, and that under section 16 of "An act concerning the sale of goods and to make uniform the law relating thereto" (*Pamph. L.* 1907, *p.* 311), there was an implied warranty that the goods were free from any defect, rendering them unmerchantable, which was not apparent on reasonable examination of the sample. There being an implied warranty, and a breach thereof, the plaintiff is entitled to recover his damages.

Another point raised by the defendant is that plaintiff, having sold a portion of the potatoes to a dealer in Atlantic City named Georgetti, and then canceled it, the defendant should have credit for the amount of the sale. The facts on this subject are that the agent of plaintiff sold two hundred bags of these potatoes to Georgetti, who examined a part, and finding they were not sound telephoned the plaintiff, who went to Atlantic City and with the purchaser examined the potatoes, or some of them, while still in the freight car in which they were shipped to him. They were found not to be perfect, and the purchaser made an offer at a reduced price which the plaintiff accepted and the purchaser gave his check for the amount, but upon further examination of the lot the buyer found they were "so rotten as to be worthless," and stopped payment of his check. Upon this condition being brought to the notice of the plaintiff he canceled the charge. It is quite evident from the facts that the Atlantic City dealer received no consideration for his check, and that when he agreed to purchase, the character of the defect was not apparent, as the disease affecting the potatoes had not fully developed.

Whether the plaintiff had a sustainable right of action against Georgetti was not an issue presented or tried, the evidence on this branch of the case being offered for the purpose of showing the condition of the potatoes and not the character of the resale. All that appears is that Georgetti rescinded the sale upon the ground of a total failure of consideration, and that the plaintiff acquiesced. While it is undoubtedly the duty of the injured party to lessen his injury to such extent as he may by reasonable diligence, it is limited to losses that might have been avoided by the exercise of ordinary care and diligence. This rule does not require the plaintiff to commit a wrong in order to avoid the consequences of the default of the defendant. He need not violate a contract, or commit a trespass to lessen the consequences of defendant's wrongful act. What is reasonable care in this sense is usually a question of fact, and if we assume that that question is presented in this record, we are of opinion, under the

circumstances shown in this case, that the rescission by Georgetti of the sale by the plaintiff to him was proper and justifiable, and does not charge the plaintiff with lack of ordinary care or reasonable diligence. There is no proof in the case to justify the inference that Georgetti when he purchased had, or could have had, any notice that the potatoes were subject to a disease that would destroy them within twenty-four hours thereafter. They were apparently not of the character he supposed when he ordered them upon the representation of plaintiff's agent, yet that he knew they were afflicted with a disease rendering them unmerchantable when he made the offer, which the plaintiff accepted, was not shown, and it is not to be presumed that he knowingly purchased a worthless article. So, when he rescinded the sale, because of the very defect for which the plaintiff repudiated his contract with the defendant, which defect was not apparent upon reasonable examination, we are of opinion that the plaintiff was not guilty of neglect of ordinary and reasonable diligence in avoiding the consequences of the defendant's injurious act when he submitted to the rescission by Georgetti.

The judgment will be affirmed, with costs.